IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In the Matter of B.B., by and through his mother K.B, | ) ) ) | Civil No. 20-00350 HG-WRP |
| Plaintiff, | ) ) ) ) | |
| vs. | ) ) ) | |
| DEPARTMENT OF EDUCATION, STATE OF HAWAII, and CHRISTINA KISHIMOTO, in her official capacity as Superintendent of the Hawaii Public Schools, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER AFFIRMING DECISION OF THE ADMINISTRATIVE HEARINGS OFFICER**

B.B. ("Student") is an 8 year-old boy who has been diagnosed with Autism Spectrum Disorder, Attention-Deficit/Hyperactivity Disorder, Oppositional Defiant Disorder, and Separation Anxiety Disorder.

Pursuant to the requirements of the Individuals with Disabilities Education Act ("IDEA"), on February 5, 2020, an Individualized Education Plan ("IEP") was developed to ensure Student was provided special education and related services.

On March 23, 2020, Student's Mother filed an Amended Request for a Due Process Hearing with the Defendants Hawaii Department of Education ("DOE") and Christina Kishimoto, in her official capacity as Superintendent of the Hawaii Public Schools.

1

Student's Mother brought a challenge to Student's February 5, 2020 IEP.

Student stopped attending the Hawaii DOE public school that he was enrolled in, and Student's Mother, partially provided Student with a home program that she found on the internet. Student's Mother claimed, at the due process hearing, that the February 5, 2020 IEP denied Student a Free Appropriate Public Education ("FAPE") as required by IDEA.  Student's Mother seeks reimbursement for the home program that she implemented at her residence.

On July 17, 2020, the Administrative Hearings Officer issued a Findings of Fact and Conclusions of Law and Decision.  The Administrative Hearings Officer found that Student was provided with a Free Appropriate Public Education pursuant to the Individuals With Disabilities Education Act and denied Mother's claim for reimbursement.

Student's Mother appeals the Administrative Hearings Officer's Decision to this Court.

The July 17, 2020 Decision of the Administrative Hearings Officer is **AFFIRMED**.

## PROCEDURAL HISTORY

On November 26, 2019, B.B., by and through his mother K.B., filed a request for a due process hearing, challenging the benefits provided to her son pursuant to the Individuals with

2

Disabilities Education Act.  (Administrative Record, Findings of Fact, Conclusions of Law, Decision at p. 199, ECF No. 8).

On July 17, 2020, the Administrative Hearings Officer issued a Findings of Fact, Conclusions of Law and Decision.  (Id.).

On August 14, 2020, K.B., on behalf of her son, B.B., filed a Complaint in the United States District Court for the District of Hawaii appealing the Administrative Hearings Officer's July 17, 2020 Decision.  (ECF No. 1).

On October 6, 2020, the Magistrate Judge issued a briefing schedule.  (ECF No. 14).

On November 24, 2020, Plaintiff requested a continuance of the briefing schedule, which was granted.  (ECF No. 17).

On December 14, 2020, Plaintiff filed her Opening Brief. (ECF No. 18).

On January 28, 2021, Defendants Department of Education, State of Hawaii, and Christina Kishimoto filed an Answering Brief.  (ECF No. 19).

Plaintiff chose not to file a Reply brief.

On March 16, 2021, the Court held a hearing on the Appeal. (ECF No. 23).

## STATUTORY FRAMEWORK: INDIVIDUALS WITH DISABILITIES EDUCATION ACT

Congress enacted the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., to financially assist

state and local agencies in educating students with disabilities.
See Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1469 (9th
Cir. 1993).  The IDEA's goal is to ensure that children with
disabilities are provided with a Free Appropriate Public
Education ("FAPE") that is designed to meet their unique needs
and prepare them for the future.  20 U.S.C. § 1400(d)(1)(A).

The State of Hawaii Department of Education, as a recipient
of federal funds, must establish and maintain procedures to
ensure that children with disabilities and their parents are
guaranteed procedural safeguards with respect to the provision of
a FAPE.  20 U.S.C. § 1415(a).  The mechanism for ensuring a FAPE
is through the development of a detailed, individualized
instruction plan known as an Individualized Education Program
("IEP") for each child.  20 U.S.C. §§ 1401(9), 1401(14), and
1414(d).  The IEP is a written statement, prepared at a meeting
of qualified representatives of the local educational agency, the
child's teacher, parent(s), and, where appropriate, the child.
The IEP contains, in part, a statement of the present levels of
the child's educational performance, a statement of the child's
annual goals and short term objectives, and a statement of
specific educational services to be provided for the child.  20
U.S.C. § 1414(d).  The IEP is reviewed, and if appropriate,
revised, at least once each year.  Id.

A parent may challenge an IEP by filing a request for a due

4

process hearing.  20 U.S.C. §§ 1415(b)(6), 1415(f).  A challenge to an IEP may allege a procedural or substantive violation of the IDEA.  <u>J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.</u>, 626 F.3d 431, 432-33 (9th Cir. 2010).  A procedural violation occurs when a State violates the IDEA's statutory or regulatory procedures in creating or implementing an IEP.  A substantive violation occurs when a State offers an IEP that is not reasonably calculated to enable the child to receive a meaningful educational benefit.  <u>Id.</u>

## **BACKGROUND**

B.B. ("Student") is an eight year-old boy.  According to the Student's Individualized Education Plan ("IEP"), he has been diagnosed with Autism Spectrum Disorder, Attention-Deficit/Hyperactivity Disorder, Oppositional Defiant Disorder, and Separation Anxiety Disorder.  (Administrative Record, February 5, 2020 Individual Education Plan at p. 15, ECF No. 13).

Pursuant to the requirements of the Individuals with Disabilities Education Act ("IDEA"), an IEP must be developed to ensure Student would be provided the special education and related services necessary for him to receive a Free Appropriate Public Education ("FAPE").

On February 5, 2020, the IEP Team met, with Student's Mother present, and an IEP was developed to address the Student's needs while he was attending Second Grade at Princess Nahienaena

Elementary School, a Hawaii Department of Education Public School on the island of Maui ("Home School").  (Id. at pp. 14-32).  The IEP Team agreed that a placement at a separate facility outside of the Home School was necessary to implement the February 5, 2020 IEP due to the severity of Student's needs.  (Id. at pp. 15, 29).  The IEP explained that Student needs to be placed in a separate facility with limited interaction with other children and adults where there are no social, emotional, or academic demands, because when Student becomes upset, he acts out with aggression, screaming, hitting or scratching others, and the use of inappropriate language or destruction of property. (Individualized Education Plan at p. 16-17, ECF No. 13).  Some of Student's behaviors at Home School included running out of the classroom, throwing objects at his service providers, yelling profanities, pulling down his pants, biting and injuring himself, making fun of other students, attempting to ride on a school golf cart, threatening school administrators and other personnel, and using items from the room as weapons against his service providers and others.  (Administrative Record, Findings of Fact, Conclusions of Law and Decision, dated July 27, 2020, at p. 205, ECF No. 8).

The IEP team agreed to investigate possible placement locations and to meet to discuss an appropriate placement that would be able to implement Student's February 5, 2020 IEP.  (Id.

at pp. 209-10, ECF No. 8).

On February 13, 2020, a Prior Written Notice of Department Action was sent to Student's Mother K.B., reflecting the intention of the IEP team to place Student in a separate facility.  (Administrative Record, Prior Written Notice of Department Action ("PWN"), dated February 13, 2020, at p. 33, ECF No. 13).

Meetings were held on February 18 and 19, 2020 to discuss possible placements and implementation of the February 5, 2020 IEP.  (Administrative Record, Findings of Fact, Conclusions of Law and Decision, dated July 27, 2020, at p. 211-13, ECF No. 8). The IEP Team members scheduled appointments at the Maui Autism Center to determine whether it would be an appropriate placement to implement Student's February 5, 2020.  (Id. at pp. 211-12).

Several attempts were made to set the next IEP meeting with Student's Mother to determine the placement. (Id. at pp. 211-14). Mother refused to work with DOE employees to determine locations in order to implement a placement.  (Id.)  Between February 19, 2020 and March 23, 2020, Student's Mother ignored various attempts by the DOE to schedule meetings.  (Id. at pp. 213-14).

On March 23, 2020, Student's Mother filed a First Amended Due Process Complaint and Resolution Proposal against the DOE and Christina Kishimoto, Superintendent of the Hawaii Public Schools, ("Defendants") challenging the February 5, 2020 IEP.

(Administrative Record, March 23, 2020 Due Process Complaint at pp. 40-46, ECF No. 8).

Student stopped attending his Home School in February 2020 shortly after the February 5, 2020 IEP was formulated. (Administrative Record, Findings of Fact, Conclusions of Law and Decision, dated July 27, 2020, at p. 205, ECF No. 8). Student's Mother created a home program which she stated she found through an internet advertisement and began partially implementing it in either April or May 2020. (Id. at p. 215). Student's Mother requested that the DOE pay for her self-administered home program, which she claims costs up to $16,000 per month. (Id. at p. 216).

On May 26, May 28, and June 8, 2020, an Administrative Hearings Officer presided over the due process complaint hearing. (Id. at p. 199).

On July 17, 2020, the Hearings Officer issued a Findings of Fact, Conclusions of Law and Decision. (Id. at pp. 197-234). The Hearings Officer found that the February 5, 2020 IEP was reasonably calculated to allow the Student to receive educational benefits in light of his unique circumstances and any failures to find a suitable location to implement the IEP were due to actions by Student's Mother. (Id. at p. 230). The Hearings Officer further found that Student's Mother's proposed home program is not an appropriate program for reimbursement. (Id. at pp. 230-

8

31).

Student's Mother filed a Complaint in this Court seeking review of the Administrative Hearings Officer's decision.

## STANDARD OF REVIEW

In evaluating an appeal of an administrative decision under the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., a district court receives the records of the administrative proceedings and may hear additional evidence at the request of a party.  The standard of proof is by a preponderance of the evidence.  A court shall grant such relief as the court determines is appropriate.  20 U.S.C. § 1415(i)(2)(C).

Courts reviewing an administrative hearing must give "due weight" to the administrative decision, and must not "substitute their own notions of sound educational policy for those of the school authorities which they review."  Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982).

The District Court has discretion to decide the amount of deference it gives to the administrative findings.  Cty. of San Diego v. Cal. Spec. Educ. Hearing Office, 93 F.3d 1458, 1466 (9th Cir. 1996).  When determining the level of deference to accord the Administrative Hearings Officer's findings, the Court may give greater deference when the Hearings Officer's findings are

"thorough and careful."  Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995), aff'd after remand on other issues, 462 Fed. Appx. 745 (2011).

Although the Court must carefully consider the Hearings Officer's findings and address the Hearings Officer's resolution of each material issue, the ultimate determination of an IEP's appropriateness is reviewed de novo.  Id.

## ANALYSIS

B.B. ("Student") is an eight year-old boy.  According to Student's February 5, 2020 Individualized Education Plan ("IEP"), Student has been diagnosed with Autism Spectrum Disoder, Attention-Deficit/Hyperactivity Disorder, Oppositional Defiant Disorder, and Separation Anxiety Disorder.  (Administrative Record, at p. 15, ECF No. 13).

The State of Hawaii, Department of Education ("Defendant DOE") determined that Student qualifies for special education and extended school year services pursuant to the Individuals with Disabilities in Education Act ("IDEA").  (Id.)

An IEP was developed for Student on February 5, 2020. Student's Mother challenged the IEP before an Administrative Hearings Officer.

The Administrative Hearings Officer ruled in favor of the Defendants DOE and Superintendent of Hawaii Public Schools.

Student's Mother seeks review of the Administrative Hearings Officer's decision in this Court.

## I.   BURDEN OF PROOF

At the administrative hearing, the DOE bore the burden of proof that its evaluation and proposed student placement complied with the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400 et seq. ("IDEA") requirements.  <u>Ashli C. ex rel Sidney C. v. State of Haw.</u>, Civ. No. 05-00429 HG-KSC, 2007 WL 247761, at *6 (D. Haw. Jan. 23, 2007).

On appeal before the District Court, Student's Mother bears the burden of proof.  <u>Schaffer ex rel Schaffer v. Weast</u>, 546 U.S. 49, 62 (2005) (explaining that under the IDEA, the burden of proof in an administrative hearing challenging an IEP is placed upon the party seeking relief).

## II.   DEFERENCE

An Administrative Hearings Officer's findings are considered "thorough and careful" when the hearings officer participates in the questioning of witnesses, includes a complete factual background, and provides a discrete analysis supporting the ultimate conclusions.  <u>R.B., ex rel. F.B. v. Napa Valley Unified Sch. Dist.</u>, 496 F.3d 932, 942 (9th Cir. 2007).  A hearings officer's determination of a witness's credibility is generally

11

entitled to deference.  Amanda J. ex rel. Annette J. v. Clark Cnty. Sch. Dist., 267 F.3d 877, 889 (9th Cir. 2001).

The Administrative Hearings Officer's 33-page Decision in this case includes a careful and accurate factual background and analysis regarding Student's IDEA eligibility.  (Administrative Record, Findings of Fact, Conclusions of Law and Decision, dated July 27, 2020, at pp. 197-231, ECF No. 8).  The Hearings Officer explains her legal conclusions thoroughly, including citations to the relevant facts and discussion of the applicable law.  She was actively involved in the proceedings over the three days of hearings.

The Hearings Officer's decision was thorough and careful and is entitled to a greater level of deference.

### III. SCOPE OF REVIEW

On March 23, 2020, Student's Mother filed a First Amended Due Process Complaint and Resolution Proposal against the DOE and Christina Kishimoto, Superintendent of the Hawaii Public Schools, challenging the February 5, 2020 IEP.  (Administrative Record, March 23, 2020 Due Process Complaint at pp. 40-46, ECF No. 8). In her First Amended Due Process Complaint, Student's Mother presented ten issues for review by the Administrative Hearings Officer.  (Id.)

Before the Administrative Hearings Officer, Student's Mother

withdrew one of her issues and instead sought review of nine

issues to be determined at the hearing.  (Administrative Record,

Findings of Fact, Conclusions of Law and Decision, dated July 27,

2020, at pp. 202-03, ECF No. 8).  The issues presented to the

Administrative Hearings Officer were, as follows:

(1)   Whether the February 5, 2020 IEP was appropriate and/or
      needed to be reviewed or revised between the time of
      May 25, 2019 and February 5, 2020;

(2)   Whether the February 5, 2020 IEP should be implemented
      in the home, community, or clinical setting;

(3)   Whether the February 5, 2020 IEP document accurately
      reflects the agreement of the IEP team as to Student's
      supports and services, specifically the clarification
      regarding Student's individual instructional support
      providers;

(4)   Whether the February 5, 2020 IEP offer fails to include
      a description of the process and/or supports Student
      needs to enable him to access his program given the
      changes, which should have been anticipated and/or were
      known, from his then-existing program to the new
      program in his new IEP;

(5)   Whether the discussion of the topic of needed frequency
      of Applied Behavioral Analysis services was sufficient
      during the IEP meetings;

(6)   Whether the February 5, 2020 IEP document accurately
      reflects the agreement of the IEP team for Student's
      placement;

(7)   Whether the February 5, 2020 IEP fails to provide an
      appropriate extended school year program, and/or was
      based upon insufficient data and/or reasoning regarding
      the duration/length of extended school year;

(8)   Whether the DOE did timely offer to implement and/or
      tender implementation of the February 5, 2020 IEP; and,

(9)   Whether failing to provide Student to access his
      educational and related services and/or supports in his

13

> current IEP during the school Spring 2020 intersession and/or thereafter, was a denial of a free and appropriate public education under the IDEA or Section 504 of the Rehabilitation Act of 1973.

(Id.)

In her written decision, the Administrative Hearings Officer addressed the nine issues raised by Student's Mother.[1]

As to **Issues No. 1 and No. 7**, Student's Mother does not raise any issues with the Administrative Hearings Officer's Order as to Issues Nos. 1 and 7 in her Opening Brief.  (See ECF No. 18).  Issues Nos. 1 and 7 are deemed waived.

As to **Issues No. 5** and **No. 9**, the Administrative Hearings Officer found that Student's Mother abandoned Issue No. 5 and failed to raise any claim as to Issue No. 9 in the hearing.  Any challenges to Issues No. 5 and No. 9 are unexhausted and not properly before this Court.  M.D. v. Hawaii, Dept. of Educ., 864 F.Supp.2d 993, 1004 (D. Haw. 2012) (finding no jurisdiction to review issues that were not exhausted before the hearings officer).

On appeal, Student's Mother does not specifically point to errors she alleges were made by the Administrative Hearings Officer in determining that the DOE provided Student with a Free

---

[1] The Administrative Hearings Officer inadvertently mis-labeled Section A twice in her Findings of Fact, Conclusions of Law and Decision.  The Section entitled "A. IDEA Procedural Requirements" on page 218 of the Administrative Record, should have been titled "**B.** IDEA Procedural Requirements."  There is no error as a result of the mislabeling instance.

14

Appropriate Public Education ("FAPE").

Student's Mother seeks de novo review of Issues Nos. 2, 3, 4, 6, 8, but her Opening Brief has attempted to raise issues that were not presented to the Administrative Hearings Officer. (Opening Brief at pp. 8-26, ECF No. 18).

Any issues not contained in the her March 23, 2020 First Amended Due Process Complaint were not properly before the Administrative Hearings officer and are not properly before this Court.  See Cnty of San Diego v. Cal. Spec. Educ. Hearing Office, 93 F.3d 1458, 1465 (9th Cir. 1996).

Specifically, Student's Mother never raised a deliberate indifference argument to the Administrative Hearings Officer as she attempts to argue in Section D. of her Opening Brief.  The Court is without jurisdiction to review issues that were not raised to the Administrative Hearings Officer.  Student's Mother's deliberate indifference argument is not properly before the Court and is unexhausted.  Dept. of Educ. Hawaii v. Leo W. by and through Veronica W., 226 F.Supp.3d 1081, 1096 (D. Haw. 2016) (explaining that review in an IDEA case is specifically limited to the issues raised in the administrative complaint, citing James M. ex re. Sherry M. v. Hawaii, 803 F.Supp.2d 1150, 1164-65 (D. Haw. 2011) and 20 U.S.C. § 1415(f)(3)(B)).

## IV.   ISSUES BEFORE THIS COURT

**ISSUE NO. 2:**   **Whether the February 5, 2020 IEP should be implemented in the home, community, or clinical setting**

**ISSUE NO. 6:**   **Whether the February 5, 2020 IEP document accurately reflects the agreement of the IEP team for Student's placement**

Issues No. 2 and No. 6 concern the February 5, 2020 IEP and the IEP Team's determination that Student be placed at a separate facility for implementation of his IEP.

The IDEA requires that disabled students be educated in the least restrictive environment, which is evaluated through consideration of the following factors: (1) the educational benefits of placement full-time in a regular class; (2) the non-academic benefits of such placement; (3) the effect Student had on the teacher and children in the regular class; and (4) the costs of mainstreaming Student.  Sacramento City Unified Sch. Dist., Bd. of Educ. v. Rachel H., 14 F.3d 1398, 1404 (9th Cir. 1994).

### A.   Student's Home School Placement

Prior to February 5, 2020, Student's placement was at his "home school," which was designated as Princess Nahienaena Elementary School, a Hawaii Department of Education Public School on the island of Maui ("Home School").  (Administrative Record,

February 5, 2020 Individual Education Plan at pp. 14-32, ECF No. 13).

Student began attending the Home School for Kindergarten at the beginning of the 2017-2018 school year, but he stopped attending in September 2017 and did not return for the rest of 2017.  (Id. at p. 15).  Student returned to the Home School in late February 2018 for speech services and attended summer programs to aid in the transition back in to a school environment for the 2018-2019 school year.  (Id.)

Student attended the Home School for First Grade during the entire 2018-2019 school year.  (Id.)

In August 2018, pursuant to the requirements of the IDEA, an IEP was developed to ensure Student was provided the special education and related services necessary for him to receive a FAPE in the 2018-2019 school year.

The DOE sought to update Student's IEP at the end of the 2018-2019 school year.  In total, eight attempts were made by the DOE to schedule an IEP meeting to review Student's needs between April 2019 and November 2019.  (Administrative Record, Conference Announcements dates April 24, 2019, July 26, 2019, August 7, 2019, August 15, 2019, August 28, 2019, September 17, 2019, October 18, 2019, November 6, 2019, November 12, 2019, and November 19, 2019 at pp. 3-13, ECF No. 13).  Each meeting was canceled by Student's Mother.  (Id.)

17

Student stopped attending his Home School in November 2019, and he did not begin attending again until February 2020. (Administrative Record, Findings of Fact, Conclusions of Law and Decision, dated July 27, 2020, at p. 205, ECF No. 8).

On November 26, 2019, the Defendants received a request for a due process hearing pursuant to Hawaii Administrative Rules Title 8, Chapter 8, from Student, by and through his Mother. (Administrative Record, Due Process Complaint dated November 26, 2019, at pp. 3-9, ECF No. 8).

### B.   Student's February 5, 2020 IEP

IEP team meetings were held on January 8, 2020, January 31, 2020, and February 5, 2020, with Student's Mother present. (Administrative Record, February 5, 2020 Individual Education Plan at pp. 14, 30-32, ECF No. 13).  From the meetings, an IEP dated February 5, 2020 was developed.  (Id.)  The 2020 IEP required that Student receive the following services:

1950 minutes of Special Education per week;

Transportation to Special Education twice per day;

400 minutes of Counseling per quarter;

270 minutes of Speech/Language Therapy per quarter;

45 minutes per month of Occupational Therapy consultation;

Daily visual schedule;

Daily access to self regulation strategies;

18

Daily frequent positive feedback in response to positive
behavior;

Daily implementation of current behavior support plan
following the Functional Behavioral Assessment;

Daily use of first/then language and schedule;

Daily allowance of choices based on limited number of
options;

Daily allowance for use of timer/audible cure to prepare for
transitions;

Daily explicit practice of play skills;

Daily structure during social times;

Daily communication/data log;

Daily use of token reward system;

Daily Individual Instructional Support;

As needed space to each lunch in a quiet area;

Daily explicit directions and a clear understanding of
completion;

Daily strategy for student requested breaks;

Daily support task completion to minimize avoiding behavior;

As needed speech therapy logs sent home to parent;

As needed, mutually agreed upon and scheduled team meetings;

Daily sensory supports;

Daily as needed chunk tasks;

3240 minutes per quarter of ABA Services; and,

Daily Behavior Intervention Plan.

(Id. at pp. 27-28).

Student's Mother and her attorney were present as were the

other IEP Team Members including the DOE's Board Certified
Behavior Analyst; the DOE's Behavioral Health Specialist;
Student's Public School's General Education Teacher; Student's
Public School's Special Education Teacher; Student's Principal;
the DOE Student Services Coordinator; the DOE School
Psychologist; the DOE District Educational Specialist; the DOE's
Attorney.  (Id. at pp. 30-32).

At the February 5, 2020 IEP meeting, the IEP Team did not
have Student's updated medical information due to Mother's
refusal to provide consent for his doctors to release the
information.  (Administrative Record, Findings of Fact,
Conclusions of Law and Decision, dated July 27, 2020, at p. 208,
ECF No. 8; see Administrative Record, February 2020 Letter from
Behavior Analyst Beau Laughlin to Mother, at pp. 315-316, ECF No.
13).

The IEP Team discussed that Student's disabilities adversely
affect his education performance and participation in appropriate
activities.  (Administrative Record, February 5, 2020 Individual
Education Plan at p. 15, ECF No. 13).  The IEP explains that:

> [Student] has difficulty transitioning between
> activities, environments, and people, has difficulty
> with emotional regulation, participating in groups,
> following adult requests, politely making requests,
> making an effort to please others, responding
> appropriately to limits/structure imposed by others,
> and avoiding aggressive behavior.
>
> (Id.)

The IEP Team determined that Student's maladaptive behaviors had progressed to a point where he would not likely be successful at the Home School and discussions were held as to the least restrictive environment appropriate for Student's placement. (Administrative Record, Findings of Fact, Conclusions of Law and Decision, dated July 27, 2020, at p. 208-09, ECF No. 8).  The IEP discussed that a separate facility was required to provide Student with home, community, and clinical setting implementation of the IEP due to Student's aggression and mistreatment of other students and staff.  (Administrative Record, Transcripts Vol. II, pp. 148-49, ECF No. 10).

At the end of the February 5, 2020 meeting, no specific placement had been agreed upon but the IEP Team agreed to meet again to include the providers of the potential program for Student to attend and to discuss how Student's IEP would be implemented.  (Administrative Record, Findings of Fact, Conclusions of Law and Decision, dated July 27, 2020, at p. 209-10, ECF No. 8)

**C.    February 13, 2020 Prior Written Notice**

On February 13, 2020, a Prior Written Notice of Department Action was sent to Student's Mother memorializing the placement discussion held at Student's February 5, 2020 IEP meeting. (Administrative Record, Prior Written Notice of Department Action

("PWN"), dated February 13, 2020, at p. 33, ECF No. 13).  The Prior Written Notice explained that Student requires placement in a separate facility in order to make progress toward educational, behavioral, and social-emotional goals.  (Id.)

The Prior Written Notice stated that Student "will participate in a modified day schedule at a separate facility. He will have access to non-disabled peers in a community setting with safe parameters (developed by providers working with him)." (Id.)  The Prior Written Notice explains that another IEP Team meeting will be scheduled to discuss implementation of the IEP based on placement decision.  (Id.)

### D. Administrative Hearings Officer's Findings Regarding The February 5, 2020 IEP Placement

The Administrative Hearings Officer found that at the time of the February 5, 2020 IEP meeting, the IEP team members were aware that Student had to be placed in an isolation room on occasion at his Home School due to his violent, aggressive behavior, as well as his tendency to run out of the classroom and ignore teacher instructions.  (Administrative Record, Findings of Fact, Conclusions of Law and Decision, dated July 27, 2020, at p. 222, ECF No. 8).  The Hearings Officer explained that the IEP team members were aware that Student was being treated by a medical team, but Student's Mother refused to provide the team with Student's latest medical records and their recommendations

22

for treatment.   (Id.)

The Administrative Hearings Officer found that the IEP team decided that the DOE would find a program at a separate facility to address Student's violent and aggressive behaviors and also be able to implement the rest of the IEP.   (Id. at pp. 222-23).

### E.   The February 5, 2020 IEP and February 13, 2020 Prior Written Notice Providing For A Separate Facility To Implement The IEP Did Not Deny Student A FAPE

In her Opening Brief, Student's Mother does not challenge any of the findings of the Administrative Hearings Officer. Rather, Student's Mother argues that she believes Student's placement should be in her own home.   The IEP team did not agree. The Administrative Hearings Officer explained:

> Student's attorney and Mother had briefly spoken during the meeting about Student being previously successful at home and in the community, however no details were offered as to the program that followed in that setting.   The IEP team members were aware and agreed that Student needed a program that needed to be created to address all of his individual needs, while addressing his aggressive and violent behaviors toward other students as well as his service providers.

(Administrative Record, Findings of Fact, Conclusions of Law and Decision, dated July 27, 2020, at p. 222, ECF No. 8).

The February 13, 2020 Prior Written Notice clearly explains the findings of the IEP Team at the February 5, 2020 IEP meeting that Student be placed in a separate facility.   Consideration of the factors set forth in Sacramento City Unified Sch. Dist., Bd.

23

of Educ. v. Rachel H., 14 F.3d 1398, 1404 (9th Cir. 1994) demonstrates that Student's placement at a separate facility was appropriate under the IDEA.  The State must only provide a basic floor of opportunity for a student.  A family's preferred schooling placement, even if it was more beneficial for the student than the department's proposed placement, does not make the department's placement inappropriate.  Gregory K. v. Longview School Dist., 811 F.2d 1307, 1314 (9th Cir. 1987).

The February 5, 2020 IEP and February 13, 2020 Prior Written Notice's determination that Student's IEP would be implemented at a separate facility where he had limited interaction with students and faculty due to his aggressive and maladaptive behaviors was reasonably calculated to provide Student with a FAPE.  See Rachel H. v. Dept of Educ. Hawaii, 868 F.3d 1085, 1092 (9th Cir. 2017) (explaining that the IEP need not name the specific school or location for placement in order to provide a FAPE).

**ISSUE NO. 3:**   **Whether the February 5, 2020 IEP document accurately reflects the agreement of the IEP team for Student's supports and services, specifically the clarification regarding Student's individual instructional support providers**

**ISSUE NO. 4:**   **Whether the February 5, 2020 IEP offer fails to include a description of the process and/or supports Student needs to enable him to access his program given the changes, which should have been anticipated and/or were known from his then-existing program to the new program in his new IEP**

24

Issues No. 3 and No. 4 concern the February 5, 2020 IEP and the IEP Team's determination that the IEP would be revised with input from providers who would implement Student's IEP and update what transitional and support services would be provided.  The manner in which the separate location and the necessary services would be arranged and structured was the necessary step.

**A.    Administrative Hearings Officer's Findings Regarding The February 5, 2020 IEP's Transitional and Support Services**

The Administrative Hearings Officer ruled that it was clear from the IEP meeting held on February 5, 2020 that the IEP would be revised with input from the providers of the new program that would be created for Student and that it was necessary to contact qualified providers to discuss programs in which Student could be placed.  (Administrative Record, Findings of Fact, Conclusions of Law and Decision, dated July 27, 2020, at p. 223, ECF No. 8).

The Administrative Hearings Officer explained that the IEP provided that the Department of Education would work with the individual instructional support providers to update the IEP once Student was placed in a program.  (Id.)

**B.    The February 5, 2020 IEP Providing IEP Would Be Revised With Input From Service Providers Upon Determination Of A Placement Did Not Deny Student A FAPE**

Student's Mother does not assert any error in the Administrative Hearings Officer's decision regarding transitional and support services.  Rather, she argues that the February 5, 2020 IEP denied Student a FAPE because it did not address his transitional and support services despite the fact that it was not yet known to what location Student would transition.

A review of the IEP demonstrates that Student would be provided with individual instructional support providers as set forth in the IEP but that a placement would need to be determined first.  The Administrative Hearings Officer explained that the "IEP team left the majority of Student's Individualized Education Plan untouched as they determined that it would be best for the providers of Student's program to make changes to the IEP if necessary."  (Administrative Record, Findings of Fact, Conclusions of Law and Decision, dated July 27, 2020, at p. 223, ECF No. 8).  The IEP team determined that a Functional Behavior Assessment needed to be conducted on Student in order to create a new behavioral services or behavioral intervention plan to be implemented.  (Id.)

The IEP team determined that a separate facility was necessary to implement Student's February 5, 2020 IEP due, in part, to his violent and aggressive behaviors.  The separate facility was vital to the transitional and support services discussions.  As no facility had yet been selected by the

February 5, 2020 IEP, it was premature to include a transitional
or support services plan.  At that time it was unclear where
Student would be transitioning to and what range of services
would be available.  The IEP Team worked following the February
5, 2020 meeting to find a proper placement, but Student's Mother
blocked attempts by the team to find a suitable placement,
refused to respond to letters and e-mails, and removed Student
from his Home School.

The Administrative Hearings Officer properly determined that
the February 5, 2020 IEP provided Student with a FAPE.


**ISSUE NO. 8:     Whether the DOE did timely offer to implement
                   and/or tender implementation of the February 5,
                   2020 IEP**


34 C.F.R. § 300.323(c)(2) provides that special education
and related services should be made available to the student in
accordance with the student's IEP as soon as possible following
the development of the IEP.


**A.     IEP Team Meetings Following Student's February 5, 2020
        IEP**


On February 18, 2020, the IEP Team met to discuss
implementation of Student's IEP and the process of finding a
suitable placement for Student.  (Administrative Record, Findings
of Fact, Conclusions of Law and Decision, dated July 27, 2020, at

p. 211-12, ECF No. 8).  At the February 18, 2020 meeting, the DOE's Board Certified Behavior Analyst was prepared to present a program and placement for Student at BOCHA LLC.  (Id.)  Student's Mother rejected the program and informed the IEP Team she did not want the DOE's Behavior Analyst to work with Student.  (Id.) Student's Mother suggested the DOE look into Maui Autism Center for placement.  (Id.)

At the request of the Student's Mother, on February 19, 2020, the President of Maui Autism Center participated in an IEP Team meeting, stating that he believed the center would be able to implement Student's IEP.  (Id. at p. 213).  Four DOE IEP Team Members set up appointments at Maui Autism Center to observe whether it would be an appropriate location to implement Student's IEP.  (Id.)  Another meeting was scheduled for February 27, 2020 to discuss the observations.  (Id.)

**B.   The Student's Mother Prevented Student's Placement At A Separate Facility**

On February 27, 2020, the day the meeting to determine the appropriateness of Maui Autism Center as a placement was scheduled, Student's Mother asked the DOE to reschedule the meeting.  (Administrative Record, Findings of Fact, Conclusions of Law and Decision, dated July 27, 2020, at p. 211-12, ECF No. 8).  Student's Mother requested the meeting be moved to March 12, 2020.  (Id.)  The DOE responded and sought to reschedule the

28

meeting at an earlier date.  (Id.)

The following day, on February 28, 2020, the Principal of Nahienaena Public School sent a letter to Student's Mother, asking for the meeting to be moved to a date earlier than March 12, 2020, as waiting was delaying the implementation of Student's February 5, 2020 IEP.  (Id. at pp. 213-14).

On March 6, 2020, another letter was sent to Student's Mother by the Principal. (Id. at p. 214).  Student's Mother responded to the DOE by e-mail, stating:

> At this point, [Student] is now enrolled in an alternative placement as discussed at the Resolution Session.  Any future transitions are speculative and we will not participate in discussions regarding transitioning from his alternative program at this time.

(Administrative Record, Petitioner's Exhibits at pp. 27-28, ECF No. 12).

### C.  Mother's Proposed Home Program

After removing Student from his Home School in February 2020, Student's Mother began partially providing her own home program to the Student in their family home.  (Administrative Record, Findings of Fact, Conclusions of Law and Decision, dated July 27, 2020, at p. 215, ECF No. 8).

Mother began partial implementation of the program in April or May 2020.  (Id.)  Student's Mother stated she found the program through an internet advertisement.  (Id.)  Student's

Mother requests that the DOE pay her for the home program that she administers.  Mother states the costs are up to $16,000 per month.  (Id. at p. 216).

> **D.** **Administrative Hearings Officer's Findings Regarding The Implementation Of The February 5, 2020 IEP**

The Administrative Hearings Officer found that, following the February 5, 2020 IEP meeting, the Department of Education worked to implement Student's IEP at a separate facility, but that it was prevented from doing so by Student's Mother.  The Administrative Hearings Officer explained as follows:

> Respondents further contacted qualified providers to discuss programs in which Student could be placed, however, it was Mother that prevented Respondents from establishing a suitable placement for Student.  Both [Bocha LLC and the Maui Autism Center] needed consent from Mother before Student would be accepted and Mother refused.  Additional attempts to schedule IEP meetings with Mother to find an acceptable program went unanswered.

(Administrative Record, Findings of Fact, Conclusions of Law and Decision, dated July 27, 2020, at p. 223, ECF No. 8).

The Administrative Hearings Officer found that the DOE was prevented from placing the Student in a private facility because they would not accept the Student into their programs without the Mother's consent.  (Id.)  The Hearings Officer explained that the DOE made numerous attempts to contact Student's Mother, and it offered to implement Student's IEP at his Home School while it was determining a placement at a separate facility.  Student's

Mother refused.  (Id. at pp. 223-24).

The Administrative Hearings Officer found that the DOE had diligently completed observations and assessments with Maui Autism Center, and the DOE had scheduled another meeting to finalize whether Student would be placed there.  (Id. at p. 227). The Administrative Hearings Officer determined that it was Student's Mother that prevented the implementation of the February 5, 2020 IEP at the separate facility.  The Hearings Officer concluded, as follows:

> It was Mother that refused to work with the DOE [Board-Certified Behavior Analyst], cancelled the scheduled meeting to discuss [the Maui Autism Center], did not respond to further requests from the DOE to meet to begin Student's Program.  The DOE had made necessary arrangements and inquiries to [Maui Autism Center] to assure Student a spot in the program and continued services even during the COVID-19 pandemic.
>
> (Id.)

The Administrative Hearings Officer also found that Student's Mother failed to meet her burden of proof in demonstrating that her home program was appropriate.  (Id. at p. 229).  The Officer explained,

> Despite Mother's testimony that Student was doing very well in her current program, Petitioners have not submitted any documents, data, or signed letters of support for Home Program to establish that Student is receiving educational benefits in that program. Petitioners have also failed to provide any documentation or verification of any amounts expended by Mother for the current program on which this Hearings Officer could base an award.
>
> (Id.)

**E.   The DOE Timely Offered To Implement Student's February 5, 2020 IEP And Did Not Deny Student A FAPE**

Student's Mother does not assert any error in the Administrative Hearings Officer's decision finding that the DOE diligently worked to place student at a private separate facility or that Student's Mother prevented the DOE from implementing Student's IEP.  Student's Mother simply argues that the DOE did not timely implement the IEP.  Mother ignores the fact that she rejected the BOCHA LLC program and then refused to consent to placement at the Maui Autism Center.  Student's Mother instead chose to create her own home program for the Student for which she now seeks reimbursement.

The Administrative Hearings Officer properly found that Student's Mother prevented the DOE from establishing a suitable placement for Student.  (Administrative Record, Findings of Fact, Conclusions of Law and Decision, dated July 27, 2020, at pp. 223, 225, ECF No. 8).  The record is clear that Student's Home School with the DOE continued to be available to him to provide special needs services in the interim, but Student's Mother refused the offer.  (Id. at pp. 213-14).  Student did not attend his Home School provided by the DOE.  Student's Mother opted to create her own home program.

Student's Mother has not established a procedural violation by the DOE because she herself caused the delay in implementation

of the IEP.  L.I. v. Hawaii, Civ. No. 10-00731 SOM-BMK, 2011 WL
6002623, *6 (D. Haw. Nov. 30, 2011) (finding no denial of FAPE
and that it "somewhat paradoxical" that the mother was
complaining about the time for the implementation of the transfer
plan when she herself caused the problem); A.R. v. Hawaii, Civ.
No. 10-00174 SOM-RLP, 2011 WL 1230403, *12 (D. Haw. Mar. 31,
2011) (finding DOE was prevented from implementing an IEP by
mother and that she was not entitled to tuition reimbursement
where IEP delay was caused by mother herself); Tracy N. v. Dept
of Educ. Hawaii, 715 F.Supp.2d 1093, 1112 (D. Haw. 2010) (no
denial of FAPE because delay in student's placement was due to
mother).

Student's Mother refused to provide Student's current
medical records to the IEP team.  She canceled meetings, ignored
requests, and refused to provide consent for Student to attend a
separate facility.

Student's Mother is not entitled to reimbursement for her
proposed home program as there is no evidence the home program is
appropriate.  Bellflower Unified Sch. Dist. v. Jimenez, 2021 WL
1055198, *17 (C.D. Cal. Feb. 17, 2021) (finding mother failed to
demonstrate that homeschooling program was specially designed to
meet the student's unique needs, citing C.B. V. Garden Grove
Unified Sch. Dist., 635 F.3d 1155, 1159 (9th Cir. 2011)).

Student's Mother has not met her burden of proving by a

preponderance of the evidence that the Hearings Officer erred in the findings of fact or conclusions of law.  The Administrative Hearings Officer's Decision is **AFFIRMED.**

## CONCLUSION

The July 17, 2020 Decision of the Administrative Hearings Officer is **AFFIRMED.**

IT IS SO ORDERED.

DATED: May 11, 2021, Honolulu, Hawaii.



Helen Gillmor
United States District Judge

In the Matter of B.B., by and through his mother K.B. v. Department of Education, State of Hawaii and Christina Kishimoto, in her official capacity as Superintendent of the State of Hawaii, Department of Education, Civ. No. 20-00350 HG-WRP; **ORDER AFFIRMING DECISION OF THE ADMINISTRATIVE HEARINGS OFFICER**

34